Laurence M. Rosen (SBN 219683)
**THE ROSEN LAW FIRM, P.A.**
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEREMIAH DOUGLAS, Individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> IMMUNITYBIO, INC., and PATRICK SOON-SHIONG, <br><br> Defendants. | No. <br><br> **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br> CLASS ACTION <br><br> JURY TRIAL DEMANDED |

Plaintiff Jeremiah Douglas ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, among other things, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendants' public documents, public filings, wire and press releases published by and regarding  ImmunityBio, Inc. ("ImmunityBio" or the "Company"), and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery. [1]

## NATURE OF THE ACTION

1.      This is a class action on behalf of persons or entities who purchased or otherwise acquired publicly traded ImmunityBio securities between January 19, 2026 and March 24, 2026, both dates inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

[1] Unless otherwise stated, all emphasis is added and internal citations are omitted.

1

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

2.    The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

3.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act (15 U.S.C. §78aa).

4.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the alleged misstatements entered and the subsequent damages took place in this judicial district.

5.    In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants (defined below), directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.    Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased ImmunityBio securities during the Class Period and was economically damaged thereby.

2

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

7. ImmunityBio is a biotechnology company. Pertinent to this action is ANKTIVA ("Anktiva"), the Company's lead biologic product.

8. The Company is incorporated in Delaware and its principal executive offices are located at 3530 John Hopkins Court, San Diego, California 92121. Within this judicial district, ImmunityBio has laboratories in Culver City and El Segundo. Additionally, the Warning Letter (defined below), was addressed to CEO Richard Adcock at the Company's facility in Culver City, California.

9. ImmunityBio common stock trades on The Nasdaq Global Select Market (the "NASDAQ") under the ticker symbol "IBRX."

10. Defendant Dr. Patrick Soon-Shiong ("Soon-Shiong") served as the Company's Executive Chairman and Global Chief Scientific and Medical Officer at all relevant times. To counsel's knowledge, Defendant Soon-Shiong lives in Los Angeles, California.

11. Defendant Soon-Shiong is collectively referred to herein as the "Individual Defendant."

12. The Individual Defendant:

(a)    directly participated in the management of the Company;

(b)    was directly involved in the day-to-day operations of the Company at the highest levels;

3

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

(c)     was privy to confidential proprietary information concerning the Company and its business and operations;

(d)     was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e)     was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f)     was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g)     approved or ratified these statements in violation of the federal securities laws.

13.    The Company is liable for the acts of the Individual Defendant and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of his employment.

14.    The scienter of the Individual Defendant and other employees and agents of the Company is similarly imputed to ImmunityBio under *respondeat superior* and agency principles.

15.    Defendant ImmunityBio and the Individual Defendant are collectively referred to herein as "Defendants."

4

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

## SUBSTANTIVE ALLEGATIONS

**Materially False and Misleading Statements Issued During the Class Period**

16. On January 19, 2026, Defendant Soon-Shiong appeared on a podcast, a link to which was posted on the Company's website (as of the time of this action, the Company has removed the podcast from its website, presumably due to the Warning Letter, as defined below) (the "Podcast").

17. Defendant Soon-Shiong made the following statements on the Podcast (alterations taken from the FDA's Warning Letter):

- "[Interleuken-15 (IL-15) is a molecule that] stimulates the natural killer (NK) cell and the T cell…the most important molecule that could cure cancer…nobody could figure out how to get IL-15 into your body with a single jab, and that is Anktiva."

- "We have now discovered and developed this drug…approved for bladder cancer, but it actually can treat all cancers…is this little vial that you inject subcutaneously that really is on the path to curing the cancer." As the FDA noted, this statement was made in conjunction with the on-screen claim, "Cancer Therapeutic Vaccine (BioShield)."

- "We have the therapy to prevent cancer if you were exposed to radiation, and that's Anktiva". As the FDA noted, that statement was

5

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

made "while the screen displays a patient brochure, titled "Getting Started with ANKTIVA®"

- "This thing called checkpoint inhibitors…It fails. The only thing that can rescue it is Anktiva…If you have lung cancer, you get radiation, chemotherapy, and you fail. And then you get a checkpoint inhibitor, and you fail. There's nothing left. The only thing left is this terrible drug called docetaxel…"

18. The statements in ¶ 17 were materially false and misleading at the time they were made for many reasons. Among others, as the FDA noted, the representations "misleadingly suggest that Anktiva will allow all NMIBC patients treated with Anktiva to be cancer-free for the long term, when this has not been demonstrated." Further, the claim that Anktiva is a cancer vaccine was false.

19. The statements contained in ¶ 17 were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) Defendant Soon-Shion materially overstated Anktiva's capabilities; and (2) as a result, Defendants' statements about ImmunityBio's business, operations, and

6

prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

### THE TRUTH BEGINS TO EMERGE

20. On March 24, 2026, a warning letter (dated March 13, 2026) from the U.S. Food and Drug Administration (the "FDA") to CEO Richard Adcock (the "Warning Letter") at the Company's Culver City, California address, was publicized.

21. The Warning Letter stated the following about Defendant Soon-Shiong's claims about Anktiva on a podcast (as well as claims about Anktiva in tv ads (undated))

The Office of Prescription Drug Promotion (OPDP) of the U.S. Food and Drug Administration (FDA) has reviewed the promotional communications, a direct-to-consumer (DTC) broadcast advertisement (US-ANK-250065-v1) (TV ad) submitted by ImmunityBio, Inc. (ImmunityBio) under cover of Form FDA 2253 *and a DTC podcast (podcast) titled, "Is the FDA BLOCKING Life Saving Cancer Treatments?" regarding ANKTIVA® (nogapendekin alfa inbakicept-pmln) solution, for intravesical use (Anktiva). The podcast features Dr. Patrick Soon-Shiong[1], Executive Chairman and Global Chief Scientific and Medical Officer for ImmunityBio. The podcast originally aired on The Sean Spicer Show on*

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

*January 19, 2026*, *and can also be accessed through ImmunityBio's website.[2]* The FDA Bad Ad Program also received complaints regarding promotional communications for Anktiva. FDA has determined that the TV ad and podcast are false or misleading. ***Thus, the TV ad and podcast misbrand Anktiva and make the distribution of the drug in violation of the Federal Food, Drug, and Cosmetic Act (FD&C Act). 21 U.S.C. 352(a), (n); 321(n); 331(a). See 21 CFR 202.1 (e)(5); (e)(7)(viii).*** Furthermore, the TV ad and podcast provide evidence that Anktiva is intended for new uses for which it lacks approval, and for which its labeling does not provide adequate directions for use. 21 U.S.C. 352(f)(1); 331(a). See 21 CFR 201.5; 201.100; 201.115; 201.128. ***In addition, the podcast was not submitted at the time of initial dissemination or publication as required by 21 CFR 314.81(b)(3)(i). These violations are concerning from a public health perspective because the promotional communications create a misleading impression that Anktiva, a treatment for a certain type of bladder cancer, can cure and even prevent all cancer***. Cancer is the second leading cause of death in the United States and a significant public health concern that affects a vulnerable patient population at increased risk of medical complications and adverse outcomes.[3]

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

22.     The Warning Letter highlighted the following statements that Defendant Soon-Shiong made on the podcast as false and misleading regarding Anktiva's purported efficacy:

- DR. SOON-SHIONG (13:27): "[Interleukin-15 (IL-15) is a molecule that] stimulates the natural killer (NK) cell and the T cell…the most important molecule that could cure cancer…nobody could figure out how to get IL-15 into your body with a single jab, and that is Anktiva."
- ON-SCREEN (13:47): "ANKTIVA BioShield" presented inside a glowing, circular image and "IMMUNITYBIO" prominently presented at the bottom of the frame
- DR. SOON-SHIONG (19:40): "We have now discovered and developed this drug…approved for bladder cancer, but it actually can treat all cancers…is this little vial that you inject subcutaneously that really is on the path to curing the cancer." In conjunction with the on-screen claim, "Cancer Therapeutic Vaccine (BioShield)."
- DR. SOON-SHIONG (47:03): "We have the therapy to prevent cancer if you were exposed to radiation, and that's Anktiva," while the screen displays a patient brochure, titled "Getting Started with ANKTIVA®"

23.     The Warning Letter further said the following about how the claims about the drug were false:

The representations in the TV ad and podcast are misleading for multiple reasons. *First, the representations in the TV ad and podcast misleadingly suggest that Anktiva will allow all NMIBC patients treated with Anktiva to be cancer-free for the long term*, when this has not been demonstrated. According to the CLINICAL STUDIES section of the PI, efficacy of Anktiva was evaluated in the QUILT-3.032 study, a single-arm, multicenter

9

trial in 77 adults with BCG-unresponsive, high-risk, NMIBC with CIS with or without Ta/T1 papillary disease following transurethral resection. The major efficacy outcome measures were complete response (CR) at any time (as defined by negative results for cystoscopy [with transurethral resection of bladder tumor and biopsies as applicable] and urine cytology) and duration of response (DOR). As the papillary component of the tumor was resected prior to treatment with Anktiva and BCG, only the effect on the CIS component could be directly observed. The CR was 62% (95% CI: 51,73) for patients treated with Anktiva and BCG (n=77). Of the 62% of patients who responded, 58% had a DOR greater than or equal to 12 months, and 40% had a DOR greater than or equal to 24 months. Therefore, these data do not support that treatment with Anktiva will allow all NMIBC patients to be cancer-free for the long term, as suggested in the TV ad and podcast, and we are not aware of other data that would support such suggestions. Moreover, the claims and representations that Anktiva is a "single jab" and a "little vial…on the path to curing the cancer" misleadingly suggest that Anktiva has a treatment effect as a single agent. The efficacy of Anktiva was established based on the results of Cohort A of QUILT-3.032, which only studied Anktiva in combination with BCG, while Cohort C, which evaluated Anktiva as a single agent in the same disease setting, was stopped early for

10

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

futility.[6] We are not aware of data that would support suggestions that Anktiva alone is an effective treatment for NMIBC.

Furthermore, QUILT-3.032 did not provide interpretable results on disease-free survival (DFS), and we are not aware of data that support the efficacy claims and representations that Anktiva can "cure" cancer. As QUILT-3.032 was designed as a single-arm study (i.e., with no comparator arm), and DFS is a time-to-event efficacy endpoint, the reported DFS results are uninterpretable; absent an appropriate comparator, it is not possible to determine if lack of recurrence is attributable to Anktiva or to other factor(s), such as the natural history of the disease. Claims such as "treat the tumor, and it doesn't come back" and "the most important molecule that could cure cancer…and that is Anktiva" suggest an improvement on the DFS endpoint even though the single-arm design of the QUILT-3.032 study was not capable of establishing improvement on this time-to-event efficacy endpoint.

In addition, the representation in both the TV ad and podcast that Anktiva is a cancer vaccine is false and is further compounded by the claim in the podcast that Anktiva is "the therapy to prevent cancer if you were exposed to radiation." According to the CLINICAL PHARMACOLOGY,

11

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

Mechanism of Action section of the PI, Anktiva is an IL-15 receptor agonist that results in proliferation and activation of NK, CD8+ and memory T cells without proliferation of immuno-suppressive Treg cells. Anktiva is not a vaccine, and we are not aware of data showing that Anktiva has a preventative effect in patients without cancer, including patients who have been exposed to radiation.

*The consistent and pervasive misleading efficacy claims and representations presented across promotional materials on different platforms are especially concerning from a public health perspective, given that they grossly misrepresent the benefits of Anktiva. We are not aware of data that would support the claims and representations described above*.

24.    The Warning Letter also highlighted the following claims, as discussed above, which were false:

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

*TV ad and Podcast*

The podcast includes the following claims:

- DR. SOON-SHIONG (19:40): "We have now discovered and developed this drug…It's approved for bladder cancer, but it actually can treat all cancers."

- DR. SOON-SHIONG (36:04): "This thing called checkpoint inhibitors…It fails. The only thing that can rescue it is Anktiva…If you have lung cancer, you get radiation, chemotherapy, and you fail. And then you get a checkpoint inhibitor, and you fail.
  There's nothing left. The only thing left is this terrible drug called docetaxel…"

- DR. SOON-SHIONG (47:03): "We have the therapy to prevent cancer if you were exposed to radiation and that's Anktiva."

25.    The Warning Letter provided the following additional information for why those statements were false:

These claims and representations from ImmunityBio, represented by Dr. Soon-Shiong, provide evidence that Anktiva is intended for new uses for which it lacks approval in the United States[7] and for which its labeling does not provide adequate directions for use. Anktiva is not approved as a treatment for "all cancers" or lung cancer after failure of checkpoint inhibitors, nor is it approved for any form of cancer prevention. Anktiva's labeling does not contain adequate directions for such uses, thereby rendering the drug misbranded.

13

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

*These claims and representations, which misleadingly suggest that Anktiva is safe and effective for uses for which it is not approved, are especially concerning from a public health perspective*. Bladder cancer represents only 4.2% of the estimated 2,041,910 new cancer cases in 2025[8] and BCG-unresponsive, high-risk, NMIBC with CIS with or without papillary tumors represents an even smaller proportion of these cases. These broad promotional claims misleadingly suggest that Anktiva has been shown to be appropriate for use in the vast majority of patients with cancer when it is only approved for use in patients with a specific type of NMIBC.

In addition, the representations made in both the TV ad and podcast provide evidence that Anktiva is intended for use as an injection, including subcutaneously, even though its labeling does not provide adequate directions for use in this manner. *As noted above, Dr. Soon-Shiong refers to Anktiva as a "single jab" and a "little vial that you inject subcutaneously" during the podcast*. Similarly, after introducing Anktiva and referring to its approval, the TV ad displays the Anktiva logo on the entire screen, in large font, followed by footage of a vial of Anktiva being removed from its carton. The TV ad then presents a close-up view of a vial of Anktiva being picked up, followed by a health care practitioner preparing to administer a dose, and then a patient in a chair after an injection.

14

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

Subsequently, another patient is being injected in the arm with a syringe. *However, according to the DOSAGE AND ADMINISTRATION section of the PI, Anktiva is for intravesical use only, and should not be administered by subcutaneous or intravenous or intramuscular routes. These representations from the TV ad and podcast, which erroneously suggest that Anktiva has been shown to be safe and effective for use in injectable routes of administration, are particularly alarming from a public health perspective given that the safety and efficacy of Anktiva when administered via a route other than intravesically are unknown at this time*.

26.    On March 24, 2026, Bloomberg published an article entitled "ImmunityBio Plunges After Getting FDA Warning on Cancer Drug". The article stated the following:

ImmunityBio Inc.'s shares plunged after the biotechnology company and its billionaire executive chairman, Patrick Soon-Shiong, were hit with a [FDA] warning letter for false and misleading promotion of its bladder cancer drug Anktiva.

The warning letter takes issue with both a TV ad for the drug, which is currently approved for a specific type of bladder cancer, and a January

15

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

episode of The Sean Spicer Show where Soon-Shiong said it could treat "all cancers."

27. On this news, ImmunityBio common stock fell $1.98 per share, or 21%, to close at $7.42 per share on March 24, 2026.

28. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's shares, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

29. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than defendants who acquired the Company's securities publicly traded on NASDAQ during the Class Period, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, members of the Individual Defendant's immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

30. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, the Company's securities were actively traded on NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate

16

discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.

31.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

32.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

33.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the Exchange Act was violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business and financial condition of the Company;

- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements

17

made, in light of the circumstances under which they were made, not misleading;

- whether the Defendants caused the Company to issue false and misleading filings during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false filings;

- whether the prices of the Company securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

34. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

35. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

18

- the Company's shares met the requirements for listing, and were listed and actively traded on NASDAQ, an efficient market;

- as a public issuer, the Company filed periodic public reports;

- the Company regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

- the Company's securities were liquid and traded with moderate to heavy volume during the Class Period; and

- the Company was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available.

36.    Based on the foregoing, the market for the Company's securities promptly digested current information regarding the Company from all publicly available sources and reflected such information in the prices of the shares, and Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

37.    Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute*

19

*Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

## COUNT I

**For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder Against All Defendants**

38.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

39.    This Count is asserted against Defendants is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

40.    During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

41.    Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;

20

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of the Company's securities during the Class Period.

42. Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

43. The Individual Defendant, who is a senior officer and director of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other

21

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or any other of the Company's personnel to members of the investing public, including Plaintiff and the Class.

44. As a result of the foregoing, the market price of the Company's securities was artificially inflated during the Class Period. In ignorance of the falsity of Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of the Company's securities during the Class Period in purchasing the Company's securities at prices that were artificially inflated as a result of Defendants' false and misleading statements.

45. Had Plaintiff and the other members of the Class been aware that the market price of the Company's securities had been artificially and falsely inflated by Defendants' misleading statements and by the material adverse information which Defendants did not disclose, they would not have purchased the Company's securities at the artificially inflated prices that they did, or at all.

46. As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

47. By reason of the foregoing, Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of the Company's securities during the Class Period.

## **COUNT II**
### **Violations of Section 20(a) of the Exchange Act**
### **Against the Individual Defendants**

48.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

49.     During the Class Period, the Individual Defendant participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of his senior positions, he knew the adverse non-public information about the Company's business practices.

50.     As officers of a publicly owned company, the Individual Defendant had a duty to disseminate accurate and truthful information with respect to the Company's' financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

51.     Because of his positions of control and authority as a senior officer, the Individual Defendant was able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the

23

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

marketplace during the Class Period concerning the Company's results of operations. Throughout the Class Period, the Individual Defendant exercised his power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendant therefore, was a "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of the Company's securities.

52.     By reason of the above conduct, the Individual Defendant is liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of himself and the Class, prays for judgment and relief as follows:

(a)     declaring this action to be a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating Plaintiff's counsel as Lead Counsel;

(b)     awarding damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, together with interest thereon;

24

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

(c)    awarding Plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)    awarding Plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: March 26, 2026

**THE ROSEN LAW FIRM, P.A.**
/s/ Laurence M. Rosen
Laurence M. Rosen (SBN 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*

25