Laurence M. Rosen (SBN 219683)
**THE ROSEN LAW FIRM, P.A.**
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Lead Counsel for Plaintiffs and the Class*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEJANDRO FERNANDEZ SUAREZ, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>IMMUNITYBIO, INC., and PATRICK SOON-SHIONG,<br><br>Defendants. | Case No. 2:26-cv-03261-MCS-AYP<br><br>**AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><u>CLASS ACTION</u><br><br>JURY TRIAL DEMANDED |

Lead Plaintiff Alejandro Fernandez Suarez and named plaintiffs Stephen Edgar and Gregory S. Bowman (collectively, "Plaintiffs"), individually and on behalf of all other persons similarly situated, by Plaintiffs' undersigned attorneys, for Plaintiffs' complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiffs and Plaintiffs' own acts, and information and belief as to all other matters, based upon, among other things, the investigation conducted by and through their attorneys, which included, among other things, a review of Defendants' public documents, public filings, wire and press releases published by and regarding ImmunityBio, Inc. ("ImmunityBio" or the "Company"), media reports, and information readily obtainable on the Internet. Plaintiffs believe that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.[1]

## NATURE OF THE ACTION

1. This is a class action on behalf of persons or entities who purchased or otherwise acquired publicly traded ImmunityBio securities between January 19, 2026 and March 24, 2026, both dates inclusive (the "Class Period"). Plaintiffs seek to recover compensable damages caused by Defendants' violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

[1] Unless otherwise stated, all emphasis is added and internal citations are omitted.

2. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act (15 U.S.C. §78aa).

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa) as the alleged misstatements entered and the subsequent damages took place in this judicial district.

5. In connection with the acts, conduct, and other wrongs alleged in this complaint, Defendants (defined below), directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications, and the facilities of the national securities exchange.

## PARTIES

6. Lead Plaintiff Alejandro Fernandez Suarez purchased ImmunityBio securities during the Class Period and was economically damaged thereby. His PSLRA certification was previously filed with the Court and is incorporated by reference herein.

7. Named plaintiffs Stephen Edgar and Gregory S. Bowman purchased ImmunityBio securities during the Class Period and were economically damaged thereby. Their respective PSLRA certifications are attached hereto as Exhibits 1 and 2.

8. ImmunityBio is a biotechnology company. Pertinent to this action is ANKTIVA ("Anktiva"), the Company's lead biologic product. The Company is incorporated in Delaware and its principal executive offices are located at 3530 John Hopkins Court, San Diego, California 92121. Within this judicial district, ImmunityBio has laboratories in Culver City and El Segundo.

9. ImmunityBio common stock trades on The Nasdaq Global Select Market (the "NASDAQ") under the ticker symbol "IBRX."

10. Defendant Dr. Patrick Soon-Shiong ("Soon-Shiong") served as the Company's Executive Chairman and Global Chief Scientific and Medical Officer at all relevant times. Soon-Shiong lives in Los Angeles, California. Soon-Shiong is referred to herein as the "Individual Defendant."

11. The Individual Defendant:

(a) directly participated in the management of the Company;

(b) was directly involved in the day-to-day operations of the Company at the highest levels;

(c) was privy to confidential proprietary information concerning the Company and its business and operations;

(d) was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e) was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f) was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g) approved or ratified these statements in violation of the federal securities laws.

12. The Company is liable for the acts of the Individual Defendant and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

13. The scienter of the Individual Defendant and other employees and agents of the Company is similarly imputed to ImmunityBio under *respondeat superior* and agency principles.

14. Defendant ImmunityBio and the Individual Defendant are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

15. ImmunityBio is a biotechnology company focused on developing immunotherapies to treat cancer and infectious diseases. Immunotherapies are a broad class of drugs intended to enhance the body's immune system to fight diseases such as cancer, and are often used in combination with more traditional cancer therapies.

16. Soon-Shiong is a medical doctor, scientist, health care mogul, and media tycoon. He accumulated much of his wealth inventing and bringing to market a cancer treatment known as Abraxane. Soon-Shiong owns the *Los Angeles Times* and certain other Southern California newspapers, which he purchased in 2018.

17. He has founded or acquired numerous companies, several of which he has taken public. In 2008, he sold APP Pharmaceuticals to the German company Fresenius for $4.6 billion. In 2010, he sold Abraxis BioScience to the biotech firm Celgene for $2.9 billion. In 2011, he formed NantWorks LLC ("NantWorks"), which served as a holding company for his various ventures. He took one of those ventures, NantKwest, public in 2015 in a $2.6 billion initial public offering.

18. In 2017, another Soon-Shiong-controlled entity acquired Altor BioScience Corporation ("Altor"). At the time, Altor was developing a cytokine

fusion protein known as ALT-803, which was later named Anktiva. In 2021, this entity merged with NantKwest, renamed itself ImmunityBio, and continued to be listed on the NASDAQ under the symbol IBRX.

19. The Company's only FDA-approved product is Anktiva. In May 2022, the Company submitted a Biologics License Application to the U.S. Food and Drug Administration ("FDA") for Anktiva in combination with Bacillus Calmette-Guérin ("BCG") for the treatment of patients with BCG-unresponsive non-muscle invasive bladder cancer ("NMIBC") with carcinoma in situ. The application was based on the Company's QUILT-3.032 study. In May 2023, the FDA issued a complete response letter denying approval of the application based on deficiencies identified in the FDA's pre-license inspection of the Company's third-party manufacturers.

20. On April 22, 2024, the FDA ultimately approved Anktiva for adult patients with BCG-unresponsive non-muscle invasive bladder cancer with carcinoma in situ with or without papillary tumors.

21. The Company subsequently sought FDA approval for use of Anktiva for patients with papillary tumors without carcinoma in situ. In May 2025, the FDA issued a Refusal to File Letter, stating that a randomized trial would be required before the FDA would review the application. The Company issued a press release

stating it was "shocked" by the decision and requesting "an urgent meeting with the Agency to resolve this issue."

22. In December 2025, *Bloomberg* reported that "Two Republican lawmakers were invited to attend a Food and Drug Administration meeting about the potential expanded approval of a drug backed by billionaire Patrick Soon-Shiong, but the plan was scrapped due to internal opposition at the agency." The report stated that "Soon-Shiong has been publicly pressuring the FDA to expand approval of Anktiva" and "has launched a publicity blitz to secure broader approval – across social media posts, podcast interviews and direct appeals to President Donald Trump."

23. As part of that publicity blitz, Soon-Shiong appeared on the Sean Spicer Show on January 19, 2026 to promote the Company and complain about the FDA.

24. On January 19, 2026, Soon-Shiong posted a link to a YouTube video of the podcast on his X (formerly known as Twitter) account, stating "I had a powerful conversation with @seanspicer on @seanspicershow. Every day, I struggle with the same question patients ask me: Why can't I access these life-saving cancer treatments? ***Americans deserve transparency, accountability, and timely access to innovation.***" (Emphasis in original). Soon-Shiong has over 150,000 followers on X.

25. As discussed below, Soon-Shiong made numerous false and misleading statements about the efficacy of Anktiva on the Sean Spicer Show. On the next trading day, January 20, 2026, the Company's stock price increased 17% to close at $6.48 per share.

26. As also discussed below, the FDA sent the Company a Warning Letter on March 13, 2026 detailing those false and misleading statements. The Warning Letter also states that the Company "should take immediate action to address any violations" and warns that "[f]ailure to adequately address any violations may result in legal action without further notice, including, without limitation, seizure and injunction." The Warning Letter required the Company to respond within 15 working days by addressing the FDA's concerns, explaining its plan to discontinue such misleading communications, or ceasing distributing Anktiva.

27. On April 6, 2026, the Company issued a press release complying with the Warning Letter. The press release stated that "[t]he response outlines the company's immediate and planned corrective actions and its ongoing commitment to ensuring all promotional communications for ANKTIVA® (nogapendekin alfa inbakicept-pmln) are accurate, balanced, and compliant with FDA regulations." The release stated that "ImmunityBio has taken proactive steps to address the OPDP's concerns, including the removal of the identified podcast from its corporate website and requesting its removal from third-party platforms.

Additionally, the company confirmed that a television advertisement mentioned in the OPDP letter was never broadcast or disseminated to the public." The Company said it "initiated a comprehensive review of all promotional materials and external communications claims with its legal and regulatory teams" and "is implementing a robust suite of corrective actions and compliance enhancements, including mandatory executive training, expanded Promotional Review Committee (PRC) protocols, and the engagement of external regulatory counsel to audit future high-visibility communications." The Company also claimed that Soon-Shiong's statements were intended to be "aspirational and forward-looking opinions regarding his vision for the company's drug development pipeline."

28. According to the Company's Form 10-Q for the second quarter of 2026, as of June 30, 2026, the Company reported $628.5 million in total assets and $1.7 billion in total liabilities. Over the first six months of 2026, the Company reported $95.4 million in total revenue – 99.4% of which was generated by sales of Anktiva in the United States. Over that same period, the Company reported $226.9 million in total operating costs and expenses, $131.5 million in loss from operations, and a net loss of $863.2 million.

## Materially False and Misleading Statements Issued During the Class Period

29. On January 19, 2026, Soon-Shiong made an appearance on the Sean Spicer Show. The Sean Spicer Show published the episode later that day on

YouTube, Rumble, Apple Podcasts, and Spotify. The Company also published a link to the podcast (the "Podcast") on the Company's website, and Soon-Shiong promoted the episode on his X account. On the Podcast, Soon-Shiong made numerous materially misleading statements about Anktiva.

30. Soon-Shiong stated that "[Interleukin-15] stimulates the natural killer cell and the T cell. That's why they called it the most important molecule that could cure cancer, and that is in 2012, published. They couldn't figure out, nobody could figure out, how to get IL-15 into your body with a single jab, and that is Anktiva."

31. Approximately six minutes later in the Podcast, purportedly recounting a conversation he had with President Donald Trump, Soon-Shiong stated "we have now discovered and developed this drug that basically, unfortunately the previous administration has held us up for four years, but we've done it. We got through it right at the end of the administration. It's approved for bladder cancer, but it actually can treat all cancers. And explained, and I said this, 'You see my hand do this? It's this little vial that you inject subcutaneously that really is on the path to curing the cancer.'" As Soon-Shiong speaks, text on the screen appears stating "Cancer Therapeutic Vaccine (BioShield)."

32. Approximately 47 minutes into the Podcast, Soon-Shiong stated "We have the therapy to prevent cancer if you were exposed to radiation, and that's Anktiva."

33. The statements in ¶¶ 30-32 were materially false and misleading at the time they were made for many reasons. First, the suggestion that Anktiva could "cure cancer" or is "really on the path to curing cancer" is materially false and misleading because Anktiva has not been approved as a cancer cure. Further, as the Warning Letter explains, the Company's QUILT-3.032 trial for Anktiva "did not provide interpretable results on disease-free survival." Among other things, as the FDA noted, the representations "misleadingly suggest that Anktiva will allow all NMIBC patients treated with Anktiva to be cancer-free for the long term, when this has not been demonstrated." Further, the claim that Anktiva is a cancer vaccine was false.

34. Second, the claims that Anktiva is a cancer "vaccine" or can "prevent cancer" are materially false and misleading because there are no data demonstrating that Anktiva is a vaccine or, as the Warning Letter notes, "has a preventative effect in patients without cancer, including patients who have been exposed to radiation."

35. Third, the claim that Anktiva is a "single jab" was materially false and misleading because the efficacy of Anktiva has only been established in combination with Bacillus Calmette-Guérin ("BCG"). ImmunityBio's trial cohort evaluating Anktiva as a single agent was stopped early because it was futile.

36. Fourth, the claim that Anktiva has been "approved for bladder cancer, but it actually can treat all cancers" is materially false and misleading because there

are no data demonstrating its efficacy in treating "all cancers," nor has it been approved for such use. As the Warning Letter notes, bladder cancers represent fewer than 5% of all new cancer cases, and the specific type of bladder cancer for which Anktiva has been approved is only a subset of that.

37. Soon-Shiong materially overstated Anktiva's capabilities and, as a result, Defendants' statements about ImmunityBio's business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

## THE TRUTH EMERGES

38. On March 24, 2026, the U.S. Food and Drug Administration's Office of Prescription Drug Promotion (the "FDA") posted a warning letter on the FDA's website addressed to CEO Richard Adcock (the "Warning Letter") at the Company's Culver City, California address. The Warning Letter was dated March 13, 2026, but it was not publicly disclosed until March 24, 2026.

39. The Warning Letter stated that Soon-Shiong's claims on the Sean Spicer Show – along with a television advertisement the Company submitted to the FDA for review – were "false and misleading." The Warning Letter stated, for example, that the Podcast statements "create a misleading impression that Anktiva, a treatment for a certain type of bladder cancer, can cure and even prevent all cancer."

40. The Warning Letter begins:

> The Office of Prescription Drug Promotion (OPDP) of the U.S. Food and Drug Administration (FDA) has reviewed the promotional communications, a direct-to-consumer (DTC) broadcast advertisement (US-ANK-250065-v1) (TV ad) submitted by ImmunityBio, Inc. (ImmunityBio) under cover of Form FDA 2253 and a DTC podcast (podcast) titled, "Is the FDA BLOCKING Life Saving Cancer Treatments?" regarding ANKTIVA® (nogapendekin alfa inbakicept-pmln) solution, for intravesical use (Anktiva). The podcast features Dr. Patrick Soon-Shiong, Executive Chairman and Global Chief Scientific and Medical Officer for ImmunityBio. The podcast originally aired on The Sean Spicer Show on January 19, 2026, and can also be accessed through ImmunityBio's website.[2] The FDA Bad Ad Program also received complaints regarding promotional communications for Anktiva. FDA has determined that the TV ad and podcast are false or misleading. Thus, the TV ad and podcast misbrand Anktiva and make the distribution of the drug in violation of the Federal Food, Drug, and Cosmetic Act (FD&C Act). 21 U.S.C. 352(a), (n); 321(n); 331(a). See 21 CFR 202.1 (e)(5); (e)(7)(viii). Furthermore, the TV ad and podcast provide evidence that Anktiva is intended for new uses for which it lacks approval, and for which its labeling does not provide adequate directions for use. 21 U.S.C. 352(f)(1); 331(a). See 21 CFR 201.5; 201.100; 201.115; 201.128. In addition, the podcast was not submitted at the time of initial dissemination or publication as required by 21 CFR 314.81(b)(3)(i). These violations are concerning from a public health perspective because the promotional communications create a misleading impression that Anktiva, a treatment for a certain type of bladder cancer, can cure and even prevent all cancer. Cancer is the second leading cause of death in the United States and a significant public health concern that affects a vulnerable patient population at increased risk of medical complications and adverse outcomes.

41. The Warning Letter highlighted the following statements that Defendant Soon-Shiong made on the podcast as false and misleading regarding Anktiva's purported efficacy:

- DR. SOON-SHIONG (13:27): "[Interleukin-15 (IL-15) is a molecule that] stimulates the natural killer (NK) cell and the T cell…the most important molecule that could cure cancer…nobody could figure out how to get IL-15 into your body with a single jab, and that is Anktiva."
- ON-SCREEN (13:47): "ANKTIVA BioShield" presented inside a glowing, circular image and "IMMUNITYBIO" prominently presented at the bottom of the frame
- DR. SOON-SHIONG (19:40): "We have now discovered and developed this drug…approved for bladder cancer, but it actually can treat all cancers…is this little vial that you inject subcutaneously that really is on the path to curing the cancer." In conjunction with the on-screen claim, "Cancer Therapeutic Vaccine (BioShield)."
- DR. SOON-SHIONG (47:03): "We have the therapy to prevent cancer if you were exposed to radiation, and that's Anktiva," while the screen displays a patient brochure, titled "Getting Started with ANKTIVA®"

42. The Warning Letter further explained why Soon-Shiong's claims were false:

> The representations in the TV ad and podcast are misleading for multiple reasons. ***First, the representations in the TV ad and podcast misleadingly suggest that Anktiva will allow all NMIBC patients treated with Anktiva to be cancer-free for the long term***, when this has not been demonstrated. According to the CLINICAL STUDIES section of the PI, efficacy of Anktiva was evaluated in the QUILT-3.032 study, a single-arm, multicenter trial in 77 adults with BCG-unresponsive, high-risk, NMIBC with CIS with or without Ta/T1 papillary disease following transurethral resection. The major efficacy outcome measures were complete response (CR) at any time (as defined by negative results for cystoscopy [with transurethral resection of bladder tumor and biopsies as applicable] and urine cytology) and duration of response (DOR). As the papillary component of the tumor was resected prior to treatment with Anktiva and BCG, only the effect on the CIS component could be directly observed. The CR was 62% (95% CI: 51,73) for patients treated with Anktiva and BCG (n=77). Of the 62% of patients who responded, 58% had a DOR greater than or

equal to 12 months, and 40% had a DOR greater than or equal to 24 months. Therefore, these data do not support that treatment with Anktiva will allow all NMIBC patients to be cancer-free for the long term, as suggested in the TV ad and podcast, and we are not aware of other data that would support such suggestions. Moreover, the claims and representations that Anktiva is a "single jab" and a "little vial…on the path to curing the cancer" misleadingly suggest that Anktiva has a treatment effect as a single agent. The efficacy of Anktiva was established based on the results of Cohort A of QUILT-3.032, which only studied Anktiva in combination with BCG, while Cohort C, which evaluated Anktiva as a single agent in the same disease setting, was stopped early for futility. We are not aware of data that would support suggestions that Anktiva alone is an effective treatment for NMIBC.

Furthermore, QUILT-3.032 did not provide interpretable results on disease-free survival (DFS), and we are not aware of data that support the efficacy claims and representations that Anktiva can "cure" cancer. As QUILT-3.032 was designed as a single-arm study (i.e., with no comparator arm), and DFS is a time-to-event efficacy endpoint, the reported DFS results are uninterpretable; absent an appropriate comparator, it is not possible to determine if lack of recurrence is attributable to Anktiva or to other factor(s), such as the natural history of the disease. Claims such as "treat the tumor, and it doesn't come back" and "the most important molecule that could cure cancer…and that is Anktiva" suggest an improvement on the DFS endpoint even though the single-arm design of the QUILT-3.032 study was not capable of establishing improvement on this time-to-event efficacy endpoint.

In addition, the representation in both the TV ad and podcast that Anktiva is a cancer vaccine is false and is further compounded by the claim in the podcast that Anktiva is "the therapy to prevent cancer if you were exposed to radiation." According to the CLINICAL PHARMACOLOGY, Mechanism of Action section of the PI, Anktiva is an IL-15 receptor agonist that results in proliferation and activation of NK, CD8+ and memory T cells without proliferation of immuno-suppressive Treg cells. Anktiva is not a vaccine, and we are not aware of data showing that Anktiva has a preventative effect in patients without cancer, including patients who have been exposed to radiation.

> ***The consistent and pervasive misleading efficacy claims and representations presented across promotional materials on different platforms are especially concerning from a public health perspective, given that they grossly misrepresent the benefits of Anktiva. We are not aware of data that would support the claims and representations described above***.

43. The Warning Letter also highlighted the following claims discussed above as false:

> *TV ad and Podcast*
>
> The podcast includes the following claims:
>
> - DR. SOON-SHIONG (19:40): "We have now discovered and developed this drug…It's approved for bladder cancer, but it actually can treat all cancers."
> - DR. SOON-SHIONG (36:04): "This thing called checkpoint inhibitors…It fails. The only thing that can rescue it is Anktiva…If you have lung cancer, you get radiation, chemotherapy, and you fail. And then you get a checkpoint inhibitor, and you fail.
>   There's nothing left. The only thing left is this terrible drug called docetaxel…"
> - DR. SOON-SHIONG (47:03): "We have the therapy to prevent cancer if you were exposed to radiation and that's Anktiva."

44. The Warning Letter provided the following additional information for why those statements were false:

> These claims and representations from ImmunityBio, represented by Dr. Soon-Shiong, provide evidence that Anktiva is intended for new uses for which it lacks approval in the United States[7] and for which its labeling does not provide adequate directions for use. Anktiva is not approved as a treatment for "all cancers" or lung cancer after failure of checkpoint inhibitors, nor is it approved for any form of cancer

prevention. Anktiva's labeling does not contain adequate directions for such uses, thereby rendering the drug misbranded.

***These claims and representations, which misleadingly suggest that Anktiva is safe and effective for uses for which it is not approved, are especially concerning from a public health perspective***. Bladder cancer represents only 4.2% of the estimated 2,041,910 new cancer cases in 2025[8] and BCG-unresponsive, high-risk, NMIBC with CIS with or without papillary tumors represents an even smaller proportion of these cases. These broad promotional claims misleadingly suggest that Anktiva has been shown to be appropriate for use in the vast majority of patients with cancer when it is only approved for use in patients with a specific type of NMIBC.

In addition, the representations made in both the TV ad and podcast provide evidence that Anktiva is intended for use as an injection, including subcutaneously, even though its labeling does not provide adequate directions for use in this manner. ***As noted above, Dr. Soon-Shiong refers to Anktiva as a "single jab" and a "little vial that you inject subcutaneously" during the podcast***. Similarly, after introducing Anktiva and referring to its approval, the TV ad displays the Anktiva logo on the entire screen, in large font, followed by footage of a vial of Anktiva being removed from its carton. The TV ad then presents a close-up view of a vial of Anktiva being picked up, followed by a health care practitioner preparing to administer a dose, and then a patient in a chair after an injection. Subsequently, another patient is being injected in the arm with a syringe. ***However, according to the DOSAGE AND ADMINISTRATION section of the PI, Anktiva is for intravesical use only, and should not be administered by subcutaneous or intravenous or intramuscular routes. These representations from the TV ad and podcast, which erroneously suggest that Anktiva has been shown to be safe and effective for use in injectable routes of administration, are particularly alarming from a public health perspective given that the safety and efficacy of Anktiva when administered via a route other than intravesically are unknown at this time***.

45. On March 24, 2026, *Bloomberg* published an article entitled "ImmunityBio Plunges After Getting FDA Warning on Cancer Drug". The article stated the following:

> ImmunityBio Inc.'s shares plunged after the biotechnology company and its billionaire executive chairman, Patrick Soon-Shiong, were hit with a [FDA] warning letter for false and misleading promotion of its bladder cancer drug Anktiva.
>
> The warning letter takes issue with both a TV ad for the drug, which is currently approved for a specific type of bladder cancer, and a January episode of The Sean Spicer Show where Soon-Shiong said it could treat "all cancers."

46. On this news, ImmunityBio common stock fell $1.98 per share, or 21%, to close at $7.42 per share on March 24, 2026.

47. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's shares, Plaintiffs and other Class members have suffered significant losses and damages.

## ADDITIONAL FACTS SUPPORTIVE OF SCIENTER

48. Given his deep, decades-long involvement in the development, approval, and marketing of cancer drugs – including Anktiva – Soon-Shiong was well aware that his statements were false and misleading.

49. In August 2021, the Company issued a press release announcing that Soon-Shiong had been appointed as the Company's Global Chief Scientific and Medical Officer. The press release stated that "Soon-Shiong will oversee the

company's global research and development programs and pipeline investments in support of its ambitious growth plans."

50. In a September 2023 press release, the Company quoted CEO Adcock praising Soon-Shiong "for his involvement in our day-to-day operations."

51. In a section entitled "Prior Communications," the Warning Letter states that "Untitled Letters dated September 9, 2025, and January 7, 2026, sent to Altor BioScience, LLC (an indirect wholly-owned subsidiary of ImmunityBio, Inc.) addressed presentations of Anktiva that were, in certain respects, similar to presentations in the TV ad and podcast addressed in this letter." The Warning Letter further states that the FDA is concerned that "despite receiving these previous Untitled Letters, ImmunityBio continues to promote Anktiva in a similarly misleading manner."

52. As required, the Company submitted letters in response to each of the Untitled Letters addressing the misleading statements. In response, the FDA issued Close-Out Letters stating that "The Food and Drug Administration has completed evaluation of your firm's response to our Untitled Letter []. Based on our evaluation, it appears that you have addressed the violation contained in this Untitled Letter." The Company's 2025 Form 10-K stated, in relevant part: "The FDA sent us two untitled letters dated September 9, 2025 and January 7, 2026 alleging that information on our webpages regarding ANKTIVA is false and misleading. Our

responses and removal of the material addressed the alleged violations in the untitled letters as stated in the FDA response letter to us on January 27, 2026 for each untitled letter."

**PLAINTIFFS' CLASS ACTION ALLEGATIONS**

53. Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than Defendants who acquired the Company's securities publicly traded on NASDAQ during the Class Period, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, members of the Individual Defendant's immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

54. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, the Company's securities were actively traded on NASDAQ. While the exact number of Class members is unknown to Plaintiffs at this time and can be ascertained only through appropriate discovery, Plaintiffs believe that there are hundreds, if not thousands of members in the proposed Class.

55. Plaintiffs' claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

56. Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation. Plaintiffs have no interests antagonistic to or in conflict with those of the Class.

57. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the Exchange Act was violated by Defendants' acts as alleged herein;
- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business and financial condition of the Company;
- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

- whether Defendants caused the Company to issue false and misleading filings during the Class Period;
- whether Defendants acted knowingly or recklessly in issuing false filings;
- whether the prices of the Company's securities during the Class Period were artificially inflated because of Defendants' conduct complained of herein; and
- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

58. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

59. Plaintiffs will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- the Company's shares met the requirements for listing, and were listed and actively traded on NASDAQ, an efficient market;
- as a public issuer, the Company filed periodic public reports;

- the Company regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;
- the Company's securities were liquid and traded with moderate to heavy volume during the Class Period; and
- the Company was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available.

60. Based on the foregoing, the market for the Company's securities promptly digested current information regarding the Company from all publicly available sources and reflected such information in the prices of the shares, and Plaintiffs and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

61. Alternatively, Plaintiffs and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

**COUNT I**

**For Violations of Section 10(b) and Rule 10b-5 Promulgated Thereunder Against All Defendants**

62. Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

63. This Count asserted against Defendants is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

64. During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

65. Defendants violated § 10(b) of the Exchange Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;
- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

- engaged in acts, practices, and a course of business that operated as a fraud or deceit upon Plaintiffs and others similarly situated in connection with their purchases of the Company's securities during the Class Period.

66. Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

67. The Individual Defendant, who is a senior officer and director of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiffs and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made

by them or any other of the Company's personnel to members of the investing public, including Plaintiff and the Class.

68. As a result of the foregoing, the market price of the Company's securities was artificially inflated during the Class Period. In ignorance of the falsity of Defendants' statements, Plaintiffs and the other members of the Class relied on the statements described above and/or the integrity of the market price of the Company's securities during the Class Period in purchasing the Company's securities at prices that were artificially inflated as a result of Defendants' false and misleading statements.

69. Had Plaintiffs and the other members of the Class been aware that the market price of the Company's securities had been artificially and falsely inflated by Defendants' misleading statements and by the material adverse information which Defendants did not disclose, they would not have purchased the Company's securities at the artificially inflated prices that they did, or at all.

70. As a result of the wrongful conduct alleged herein, Plaintiffs and other members of the Class have suffered damages in an amount to be established at trial.

71. By reason of the foregoing, Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder and are liable to the Plaintiffs and the other members of the Class for substantial damages that they

suffered in connection with their purchase of the Company's securities during the Class Period.

**COUNT II**

**Violations of Section 20(a) of the Exchange Act**

**Against the Individual Defendant**

72. Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

73. During the Class Period, the Individual Defendant participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of his senior positions, he knew the adverse non-public information about the Company's business practices.

74. As an officer of a publicly owned company, the Individual Defendant had a duty to disseminate accurate and truthful information with respect to the Company's financial condition and results of operations, and to correct promptly any public statements issued by the Company that had become materially false or misleading.

75. Because of his positions of control and authority as a senior officer, the Individual Defendant was able to, and did, control the contents of the various reports, press releases, and public filings which the Company disseminated in the marketplace during the Class Period concerning the Company's results of

operations. Throughout the Class Period, the Individual Defendant exercised his power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendant therefore, was a "controlling person" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, he participated in the unlawful conduct alleged which artificially inflated the market price of the Company's securities.

76. By reason of the above conduct, the Individual Defendant is liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and the Class, pray for judgment and relief as follows:

(a) declaring this action to be a proper class action, designating Plaintiff Alejandro Fernandez Suarez as Lead Plaintiff and certifying Plaintiffs as class representatives under Rule 23 of the Federal Rules of Civil Procedure and designating Plaintiffs' counsel as Lead Counsel;

(b) awarding damages in favor of Plaintiffs and the other Class members against all Defendants, jointly and severally, together with interest thereon;

(c) awarding Plaintiffs and the Class reasonable costs and expenses incurred in this action, including attorneys' fees and expert fees; and

(d) awarding Plaintiffs and other members of the Class such other and further relief as the Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiffs hereby demand a trial by jury.

Dated: August 14, 2026

**THE ROSEN LAW FIRM, P.A.**

By: *Laurence M. Rosen*

Laurence M. Rosen, Esq. (SBN 219683)
355 S. Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

Daniel Tyre-Karp (*pro hac vice*)
275 Madison Avenue, 40th Floor
New York, NY 10016
dtyrekarp@rosenlegal.com

*Lead Counsel for Plaintiffs and the Class*